**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JUSTIN STRADER,

Plaintiff,

v.

Case No.

VEOLIA WTS SERVICES, INC.,
a Domestic For Profit Corporation, and
B&E RESOURCES LLC,
a Domestic For Profit Corporation,

Hon.

Defendants.
_________________________________________/

BOGAS & KONCIUS, PC
Kathleen L. Bogas (P25164)
Brian E. Koncius (P69278)
Attorney for Plaintiff
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
(248) 502-5000 / Fax: (248) 502-5001
bkoncius@kbogaslaw.com
office@kbogaslaw.com
_________________________________________________________________________/

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, JUSTIN STRADER, by and through his attorneys, BOGAS & KONCIUS P.C., and states as follows:

## NATURE OF THE ACTION

1. This action arises from repeated unwelcome sexual touching and sexually humiliating conduct at the Veolia Hemlock, Michigan project, Defendants' failure to stop the misconduct promptly - despite repeated notice, and retaliation culminating in Plaintiff's demotion and constructive discharge.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Justin Strader is an individual residing in Bacliff, Texas who worked as Site Quality Manager at the Hemlock, Michigan project during the events alleged here. Plaintiff is male.

3. Defendant Veolia WTS Services, Inc. is a domestic for profit corporation doing business throughout the United States and the State of Michigan that conducted business and exercised operational and managerial authority at the Hemlock, MI project in Saginaw County.

4. Defendant B&E Resources LLC is a domestic limited liability company that recruited and employed Plaintiff to perform quality-management work at the Hemlock, MI project in Saginaw County.

5. B&E is an employer as defined under Title VII and ELCRA.

6. Veolia is an employer as defined under Title VII and ELCRA.

7. The actions complained of herein took place within the State of Michigan.

8. The amount in controversy exceeds $75,000 exclusive of costs, interest, and attorney fees.

9. This case arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. (Title VII) and Michigan's Elliott-Larsen Civil Rights Act, MCLA 37.2101, *et seq*. (ELCRA) for sexual harassment, hostile work environment, and retaliation, including the resulting loss of employment, compensation, professional standing, and emotional and physical well-being.

10. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and jurisdiction under 42 U.S.C. § 2000e-5(f)(3).

11. This Court has supplemental jurisdiction over the ELCRA claims under 28 U.S.C. § 1367(a), because those claims arise from the same employment relationship as the federal claims and form part of the same case or controversy.

12. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because the challenged employment practices occurred in Michigan and Plaintiff worked and would have continued to work but for those practices. The Northern Division is appropriate because the Hemlock site is in Saginaw County, within that division under 28 U.S.C. § 102(a)(2).

## FACTUAL ALLEGATIONS

### EMPLOYMENT RELATIONSHIP AND CONTROL

13. B&E hired Plaintiff on or about December 22, 2024, as Site Quality Manager for the Veolia Hemlock project. Plaintiff began working at the Michigan site in January 2025.

14. Plaintiff's duties included quality oversight, documenting project changes, verifying that field work followed applicable procedures and specifications, and obtaining current drawings and controlled project documents necessary to perform those functions.

15. B&E assigned Plaintiff to the project and supervised him through, among others, Project Manager Charles Simmons. B&E maintained human-resources and quality-management authority over Plaintiff through Human Resources Manager Billy Emfinger and Quality Director Keith Nolan.

16. Veolia controlled project operations and the technical requirements governing Plaintiff's daily work. Its site and project managers interacted directly with Plaintiff about his work, controlled project information needed for that work, and exercised authority over whether Plaintiff could remain in his managerial assignment at the site.

17. David Kindy functioned as Veolia's highest-ranking on-site manager during the relevant period. He exercised operational authority and authority

concerning project timesheets. Kindy acted as Veolia's on-site representative and exercised authority over the workplace where Plaintiff worked.

18. Veolia received and "investigated" Plaintiff's harassment complaints through its human-resources personnel, communicated investigation results to Plaintiff – finding his complaints to have merit, and exercised authority to remove Kindy from the site.

19. In October 2025, Veolia requested Plaintiff's removal from his managerial assignment, and B&E implemented a demotion following discussions between the companies.

20. B&E's Project Manager stated that the change came at Veolia's request and was not performance-based.

21. B&E and Veolia thus shared or co-determined material terms and conditions of Plaintiff's employment, including supervision, work assignments, workplace conditions, and continued placement in his managerial role.

22. Plaintiff alleges that each was his employer or joint employer for purposes of the claims below.

23. Each is also responsible for its own acts and omissions as alleged.

## ADMINISTRATIVE PROCEEDINGS

24. By July 10–11, 2025, Plaintiff had reported in contemporaneous correspondence that was going to and/or had filed complaints with the Equal

Employment Opportunity Commission ("EEOC") and Michigan Department of Civil Rights ("MDCR") concerning the harassment and retaliation.

25. Plaintiff filed EEOC Charges against B&E and Veolia. The Charges were dual filed with MDCR.

26. The EEOC issued a Notice of Right to Sue regarding B&E on August 3, 2026, which Plaintiff saw shortly thereafter when checking his portal. This action is filed within ninety days of receipt of the same.

27. The EEOC issued a Notice of Right to Sue on regarding Veolia on August 3, 2026, which Plaintiff saw shortly thereafter when checking his portal. This action is filed within ninety days of receipt of the same.

## UNWELCOME SEXUAL CONDUCT AND REPEATED NOTICE

28. Beginning in approximately May 2025, Kindy repeatedly subjected Plaintiff to unwanted physical contact involving Plaintiff's chest, buttocks, and groin area, together with sexual gestures and comments.

29. In May 2025, in front of multiple personnel, Kindy grabbed both of Plaintiff's pectoral muscles and then reached toward Plaintiff's groin, stopping short of grabbing his genitals and touching his jeans while saying "testicles."

30. Plaintiff found the conduct sexually humiliating and unwelcome.

31. Tia Gross witnessed the May incident and later provided a written statement describing Kindy grabbing Plaintiff's chest and motioning toward his private areas.

32. Carlos Delgado separately reported witnessing Kindy repeatedly touch or flick Plaintiff's chest and observing that Plaintiff was visibly uncomfortable and did not share Kindy's laughter.

33. Plaintiff immediately reported the May conduct to B&E Project Manager Charles Simmons and B&E Safety Manager Mike Nobles.

34. They directed him to report the matter to Veolia Safety Manager Troy Vedrode, and Plaintiff did so.

35. The reports did not produce prompt, effective protection from further misconduct.

36. On May 30, 2025, a former Veolia clerk, Samantha Allen, emailed Vedrode about Kindy's inappropriate conduct.

37. Her report described sexual remarks, explicit images of female anatomy, and a "Badge, wallet, testicles" gesture toward another employee.

38. Vedrode later confirmed in writing that he escalated an employee's email describing the conduct to his superior.

39. During late May and June 2025, Plaintiff experienced laughter and ridicule from site management concerning the touching.

40. The response reinforced that Plaintiff's complaints were not being taken seriously, while the unwanted conduct continued.

41. On July 3, 2025, as Plaintiff walked into the water-treatment unit and Kindy walked out, Kindy slapped Plaintiff's buttocks without consent.

42. B&E electrician Ismael Trevino witnessed the incident and identified Kindy's actions in a contemporaneous written statement.

43. Plaintiff immediately reported the July 3 incident to site management, including Simmons and Nobles, and reported it to Veolia Human Resources by email.

44. On July 7, 2025, Kindy slapped Plaintiff's left breast as he walked past him. Plaintiff again promptly reported the contact to site management, including Simmons and Nobles, and to Veolia Human Resources by email.

45. On July 10, 2025, Plaintiff texted Nobles requesting a witness statement concerning the May touching and other misconduct.

46. Approximately a few hours later, around 10:30 a.m., Simmons confronted Plaintiff in Dylan Williams's presence.

47. Simmons said he could not believe Plaintiff's message to Nobles and warned Plaintiff that he would "stir up a hornets' nest."

48. Plaintiff explained that the conduct had already been reported and that he was obtaining witness statements.

49. Simmons responded, "I've never been on a job where people don't engage in grab ass or inappropriate behavior."

50. The warning by his direct manager intensified the intimidation Plaintiff experienced in his daily work.

51. On July 12, 2025, while Plaintiff sat at his desk, Kindy entered the office, asked for the Wi-Fi password, and unbuckled his belt, unzipped his pants, and partially lowered them while tucking in his shirt and speaking directly to Plaintiff.

52. In the context of the repeated unwanted touching and ignored complaints, Plaintiff experienced this as further sexual intimidation.

53. Plaintiff again reported this conduct by Kindy to Simmons and Veolia Human Resources.

54. The conduct directed at Plaintiff was not welcome joking or mutual horseplay. Plaintiff did not consent to the touching, reacted with visible discomfort, and repeatedly sought management intervention to make it stop.

55. The harassment included sex-specific targeting of Plaintiff's male anatomy and sexual humiliation of him in front of colleagues.

## REMOVAL OF KINDY DID NOT END THE RETALIATION

56. Veolia removed Kindy from the site on or about July 14, 2025.

57. While Kindy could no longer physically touch Plaintiff, the management hostility and retaliation for Plaintiff's reports, however, continued.

58. On July 18, 2025, B&E Human Resources Manager, Emfinger, called Plaintiff about the situation complained of.

59. Plaintiff told Emfinger that the conduct had continued for months and that Plaintiff had been trying to stop it.

60. Emfinger acknowledged that the conduct was wrong and asked Plaintiff to speak with Veolia Human Resources.

61. Plaintiff spoke with Veolia Human Resources Manager, Janae Carlisle, on July 21, 2025, after she arranged a call concerning his complaint.

62. On August 14, 2025, Carlisle sent Plaintiff an investigation-outcome email stating: "The complaint was found to have merit, specifically regarding Anti-Harassment Policy."

63. Plaintiff responded the same day requesting preservation of records, a summary of corrective action, confirmation that Kindy would remain removed and have no work-related contact with him, and anti-retaliation protections.

64. Plaintiff did not receive a response to those requests.

65. In an August 21, 2025, conversation, Simmons acknowledged that Plaintiff had reported the touching for months. However, when Plaintiff requested

a statement, Simmons refused, explaining that his livelihood was at stake and that he did not want to be part of a matter that would give B&E a "black eye."

66. On September 9, 2025, when Plaintiff remarked about long working hours and back pain by saying, "We need a masseuse," Simmons replied, making fun of Plaintiff for his previous harassment complaints, "No, then we would have another sexual harassment case."

67. After his complaints, Plaintiff was repeatedly excluded from project correspondence necessary to discharge his quality-management responsibilities.

68. On September 12, 2025, he emailed Veolia Contracts Performance Manager, Kathryn Sepulveda, and copied Veolia and B&E management, about the exclusions.

69. Veolia Project Manager acknowledged that Plaintiff had been left out.

## FURTHER SEXUAL CONDUCT, RENEWED COMPLAINTS, AND TARGETED SCRUTINY

70. On September 22, 2025, Veolia Commissioning Resource Manager, Robert ("Rocky") Müller Jr., was visibly angry and slamming office doors.

71. Plaintiff suggested that Müller use a dumbbell to relieve stress. Looking directly at Plaintiff, Müller grabbed his genitals and stated, "I have one," in front of several employees.

72. Plaintiff promptly reported Müller's conduct to Simmons.

73. Plaintiff could not believe that this type of sexual and offensive conduct directed at him was happening again after Defendants had already been notified of Kindy's sexual touching and gestures.

74. During a September 29, 2025, meeting about gasket installation, Müller referred to Kindy while mocking Plaintiff, saying, "Let me guess, David Kindy told you to use them." When Plaintiff, choosing not to take the bait, instead clarified that Bareuther had provided the instruction, Müller became angry and told Plaintiff, "You're starting to piss me off."

75. On September 29, 2025, Plaintiff emailed Carlisle, copying Emfinger and Simmons, a report expressly complaining of sexual harassment, retaliation, and a hostile work environment titled "New Report of Harassment/Retaliation – Robert Muller (Incidents 9/22/25 & 9/29/25)."

76. On October 1, 2025, Plaintiff participated in a call with Veolia Human Resources concerning his reports.

77. At approximately 1:30 p.m. that same day, while Plaintiff spoke in his office with Veolia Quality Manager Bill Shafer, a person passed the office and audibly said, "Snitches get stitches." Both Plaintiff and Shafer heard it.

78. In light of the timing and his ongoing complaints, Plaintiff feared for his safety and requested an investigation and protection.

79. He received no response to that request.

80. On October 7–8, 2025, Simmons texted Plaintiff that "Katy wants you off this job because she can't buck you," referring to Sepulveda; that "Veolia is gunning for you"; and that "Bill is your worst enemy right now," referring to Shafer. Simmons further advised Plaintiff to keep his head down and keep the exchange between them.

81. On October 15, 2025, during a discussion with Veolia Site Manager, Lee Hickman, Shafer, Simmons, and B&E Field Engineer, Leo Martinez, Plaintiff objected that Shafer had been directed to go through Plaintiff's work to find material to use against him. Hickman acknowledged that, "Every time they find something wrong, you have an answer for it, and it's frustrating."

82. Plaintiff reported that targeting to B&E Quality Director Nolan by telephone and email.

83. Plaintiff had received no response.

84. In a follow-up conversation on October 15, Simmons and Nobles acknowledged that Veolia personnel had been directed to scrutinize Plaintiff's work to find anything they could use against him.

85. This was a campaign to create pretext for removing Plaintiff after his harassment and retaliation complaints.

86. On October 22, 2025, Carlisle notified Plaintiff that the "investigation" into these later allegations was complete and that Veolia had not found enough information to support them.

87. However, this later "investigation" did not speak to or attempt to speak to witnesses identified by Plaintiff to the September conduct.

88. In an October 23 conversation, Simmons confirmed that he had not been interviewed and stated that "they're trying to get a rise out of you so they can remove you from the job."

**DEMOTION AND CONSTRUCTIVE DISCHARGE**

89. On October 30, 2025, Plaintiff was told that, effective the following Monday, he would be moved from Site Quality Manager to Site QC Technician at the same project.

90. This change stripped Plaintiff of managerial responsibilities and professional standing, eliminated his office space, and reassigned him to outdoor field duties without an assigned climate-controlled workspace and with standard field accommodations, including portable restrooms.

91. Plaintiff was told his compensation rate and benefits would remain the same. However, the new assignment involved fewer total hours, which would reduce overall earnings.

92. Plaintiff documented those concerns in an October 30 email to Nolan and requested confirmation that his weekly hours and pay would not be reduced.

93. The alleged reason for the change was a lack of communication between Plaintiff and the site team.

94. Simmons told Plaintiff that the instruction came from Veolia.

95. In an October 30 conversation, Simmons confirmed that B&E and Veolia management had met at length, that Veolia wanted Plaintiff off the project, and that the frustration concerned Plaintiff's complaints rather than his performance.

96. Simmons stated that he had heard Veolia management say multiple times that they were "out to get" Plaintiff.

97. Simmons further agreed that the change was not performance-related and was made at Veolia's request.

98. He acknowledged that, absent the Kindy sexual harassment incident and the problems discussed, there would not have been an issue, but stated that B&E could not risk losing the whole job over one person.

99. In an October 31, 2025, conversation between Plaintiff, Nobles and B&E Site Safety Technician, Tony Caleau, Veolia's involvement in the reassignment was acknowledged and identified the demotion as a "forced

resignation" where Plaintiff had no disciplinary write-ups, attendance issues, or performance problems.

100. By this point, Plaintiff had repeatedly sought relief through site management, both companies' human-resources personnel, and external civil-rights channels. Instead of receiving effective protection, Plaintiff faced escalating hostility, targeted scrutiny, and an official loss of his position.

101. After the demotion was announced, Plaintiff took medical leave because of the mental-health effects of these workplace conditions.

102. The cumulative harassment, retaliation, and demotion made returning to work intolerable.

103. Plaintiff resigned effective November 12, 2025.

104. A reasonable employee in Plaintiff's position, after repeated unwanted sexual contact, unsuccessful requests for protection, persistent management hostility toward reporting, and a pretextual demotion at the Defendants' insistence, would have felt compelled to resign.

105. Defendants intended to force Plaintiff out or knew or reasonably should have foreseen that these conditions would cause his resignation.

106. Plaintiff was constructively discharged as a consequence of the Defendants' actions and violations of policy and the law.

## INJURY AND CAUSATION

107. Plaintiff suffered loss of employment, wages, benefits, earning opportunities, and professional standing.

108. The harassment and retaliation caused Plaintiff anxiety, feelings of depression, panic-like symptoms, humiliation, insomnia, diminished concentration, headaches, gastrointestinal distress, and other physical manifestations of emotional distress. He required medication for sleep and gastrointestinal symptoms and experienced continuing impairment in his personal and professional life.

109. Plaintiff also experienced reputational injury and diminished confidence in seeking work in the closely connected industry.

## COUNT I — TITLE VII SEXUAL DISCRIMINATION AND HARASSMENT / HOSTILE WORK ENVIRONMENT AGAINST VEOLIA AND B&E

110. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

111. Plaintiff is a male and entitled to the protections of 42 U.S.C. § 2000e, et seq. (Title VII).

112. At all relevant times, Plaintiff was an employee, and Defendants were his employer, covered by and within the meaning of 42 U.S.C. § 2000e, et seq. (Title VII).

113. Defendants, by and through their agents, servants and/or employees, intentionally harassed and discriminated against Plaintiff on account of his sex in violation of 42 U.S.C. § 2000e, et seq. (Title VII), by the following acts:

a. discharging and/or otherwise harassing and/or discriminating against Plaintiff with respect to his employment, compensation or a term, condition, or privilege of employment, because of his sex;

b. limiting, segregating and/or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of his sex;

c. segregating, classifying and/or otherwise discriminating against Plaintiff on the basis of his sex with respect to a term, condition, or privilege of employment, including a benefit plan or system; and

d. failing to provide a work environment free from sex or gender discrimination and harassment.

114. Plaintiff was subjected to unwelcome sexual and sex-based physical and verbal conduct, including repeated touching of his chest and buttocks, a gesture toward his groin with a reference to testicles, lowering of pants in his office, and the subsequent genital gesture and statements directed at him by management.

115. For the reasons pleaded above, including the targeting of Plaintiff's male anatomy and the differential forms of sexualized conduct described by witnesses, the harassment was because of sex.

116. The conduct was sufficiently severe or pervasive, considering its repeated physical nature, sexual humiliation, management authority, and persistence despite reports, to alter Plaintiff's employment conditions and create an objectively hostile and abusive working environment. Plaintiff actually perceived it as hostile and abusive, and it substantially interfered with his work.

117. Each Defendant had actual notice through its identified managers and human-resources personnel and failed to take reasonably prompt and effective corrective measures within its control. B&E left Plaintiff exposed after repeated reports; Veolia did not remove Kindy until approximately July 14, after further incidents, and failed to protect Plaintiff adequately from the subsequent sexual conduct and complaint-related hostility.

118. To the extent the conduct was committed by persons empowered to take tangible employment actions affecting Plaintiff, Plaintiff also seeks to hold the relevant employer vicariously liable under applicable agency principles. Alternatively, whether a harasser was an employee, contractor, or other project representative, each Defendant knew of the conduct and failed to exercise its available workplace control to prevent or correct it.

119. As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e, et seq. (Title VII), Plaintiff has suffered bodily injury, depression, emotional and physical distress, mental and physical anguish, loss of reputation,

humiliation and embarrassment and the physical manifestations thereof, and will so suffer in the future.

120. As a further direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e, et seq. (Title VII), Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to obtain legal services in order to bring this lawsuit and will suffer additional damages in the future.

## COUNT II — TITLE VII RETALIATION AGAINST VEOLIA AND B&E

121. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

122. During the time Plaintiff was employed by Defendants, Plaintiff opposed sex discrimination and harassment based on Title VII.

123. After making complaints of sex harassment and discrimination, Plaintiff was subject to retaliation and further discrimination by Defendants and their agents, servants and/or employees, including, but not limited to constructive termination from his employment.

124. Plaintiff engaged in protected opposition by repeatedly reporting sexual touching and harassment to Simmons, Nobles, Vedrode, Carlisle, Emfinger,

and other management personnel; requesting witness statements and corrective action; and reporting further sexual-harassment and retaliation complaints. Plaintiff held a reasonable, good-faith belief that the reported conduct violated Title VII. Plaintiff also engaged in protected participation in EEOC proceedings.

125. Defendants knew of Plaintiff's protected activity through the reports, communications, interviews, and management discussions alleged above.

126. Plaintiff was subjected to discrimination and other retaliatory acts by Defendants and their agents, servants and/or employees in retaliation for his opposition to civil rights violations and having complained about sex harassment and discrimination as described above, in violation of Title VII.

127. After learning of Plaintiff's protected activity, Defendants subjected Plaintiff to materially adverse treatment, including reporting-related warnings and ridicule, exclusion from essential communications, targeted scrutiny intended to generate pretextual grounds for removal, demotion and undesirable reassignment, and conditions culminating in constructive discharge. Taken together, the retaliatory harassment would dissuade a reasonable worker from reporting discrimination.

128. Plaintiff's protected activity was a but-for cause of the demotion and other challenged retaliatory actions. The sequence of renewed complaints and escalating scrutiny, reporting-related warnings, and statements connecting the

removal request to Plaintiff's complaints support that causal connection. The stated communication rationale was pretextual, as further shown by the admissions that the change was not performance-based and that Plaintiff had no disciplinary or attendance issues.

129. Veolia sought Plaintiff's removal from the managerial role in retaliation for his proper workplace complaints, and B&E knowingly implemented the demotion rather than protecting Plaintiff from retaliation. Each Defendant participated in the adverse decision or its implementation and is responsible for its own retaliatory acts as an employer or joint employer.

130. As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e, et seq. (Title VII), Plaintiff has suffered bodily injury, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical manifestations thereof, and will so suffer in the future.

131. As a further direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e, et seq. (Title VII), Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to obtain legal services in order to bring this lawsuit and will suffer additional damages in the future.

## COUNT III — ELCRA SEXUAL DISCRIMINATION AND HARASSMENT/ HOSTILE WORK ENVIRONMENT AGAINST VEOLIA AND B&E

132. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

133. As an employer and/or agent within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), Defendants owed Plaintiff a duty not to harass and/or discriminate against him with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of his sex.

134. Plaintiff is a male, and otherwise a member of a protected class entitled to the protections afforded by ELCRA.

135. Plaintiff's sex was a factor that made a difference in Defendants' decision to subject him to the wrongful and discriminatory treatment, including a hostile environment, harassment, termination and/or other disparate treatment.

136. Defendants and their agents, representatives, and/or employees, were predisposed to harass and discriminate on the basis of sex/gender and acted in accordance with that predisposition.

137. While employed by Defendants, Plaintiff was subjected to sex harassment and/or discrimination by Defendants and their agents, servants and/or

employee as set forth herein, said acts being made unlawful by the ELCRA, M.C.L.A.§ 37.2101, *et seq*.

138. Defendants and their agents, servants and/or employees, intentionally harassed and/or discriminated against Plaintiff on account of his sex in violation of the ELCRA by the following acts:

a. Terminating or otherwise harassing and/or discriminating against Plaintiff with respect to his employment, compensation, or a term, condition or privilege of employment, because of his sex;

b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of his sex;

c. Segregating, classifying or otherwise harassing and/or discriminating against Plaintiff on the basis of his sex with respect to a term, condition or privilege of employment, including a benefit plan or system;

d. Creating a hostile work environment on the basis of Plaintiff's sex; and/or

e. Failing to provide a work environment free from sex harassment and/or discrimination.

139. The repeated unwanted touching, sexual gestures, and other conduct alleged above were unwelcome conduct or communications of a sexual nature within ELCRA. Plaintiff did not consent to them, and his repeated complaints made that lack of consent clear.

140. The conduct had the purpose or effect of substantially interfering with Plaintiff's employment and creating an intimidating, hostile, and offensive work environment. Considering the totality of the circumstances, including repeated physical contact, sexual humiliation, management authority, and disregard of notice, a reasonable person in Plaintiff's position would perceive the environment as substantially interfering with employment.

141. Each Defendant was responsible for maintaining nondiscriminatory employment conditions within its control. Each received actual notice through the managers and human-resources personnel identified above but failed to take prompt and adequate action reasonably calculated to prevent further harassment.

142. As a direct and proximate result of Defendants' violation of ELCRA, M.C.L.A.§ 37.2101, *et seq*., Plaintiff has suffered bodily injury, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical manifestations thereof, and will so suffer in the future.

143. As a further direct and proximate result of Defendants' violation of ELCRA, M.C.L.A.§ 37.2101, *et seq*., Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been

required to obtain legal services in order to bring this lawsuit and will suffer additional damages in the future.

**COUNT IV — ELCRA RETALIATION AGAINST VEOLIA AND B&E**

144. Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

145. Plaintiff engaged in conduct protected under the ELCRA where he opposed harassing and discriminatory conduct prohibited by ELCRA, filed civil-rights complaints as identified above, and assisted the investigation of that conduct by seeking witness statements and providing reports.

146. Defendants had knowledge of Plaintiff's protected activities.

147. Defendants retaliated against Plaintiff through the acts alleged above, particularly the campaign to justify his removal, the demotion and reassignment, and the conditions causing his constructive discharge. Those actions adversely affected his employment and would deter a reasonable employee from opposing harassment or participating in a civil-rights investigation.

148. Plaintiff's protected activity was a significant factor in Defendants' adverse treatment and made a difference in the decision to retaliate against him, demote and force him out. The warnings and admissions, the connection between the removal request and Plaintiff's complaints, the absence of performance-based

grounds, and the companies' coordinated implementation support that causal relationship.

149. The retaliation would not have occurred had Plaintiff not engaged in activity protected by the ELCRA.

150. Defendants' actions were retaliatory and in violation of the ELCRA.

151. As a direct and proximate result of Defendants' violation of ELCRA, M.C.L.A.§ 37.2101, *et seq*., Plaintiff has suffered bodily injury, depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical manifestations thereof, and will so suffer in the future.

152. As a further direct and proximate result of Defendants' violation of ELCRA, M.C.L.A.§ 37.2101, *et seq*., Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to obtain legal services in order to bring this lawsuit and will suffer additional damages in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants, and requests that the Court:

A. Declare that Defendants violated Title VII and ELCRA as established by the evidence;

B. Award back pay, lost benefits, and other past economic loss caused by the violations, together with appropriate prejudgment interest;

C. Order reinstatement if appropriate and feasible, or award front pay in lieu of reinstatement as warranted by the evidence;

D. Award compensatory damages for emotional distress, humiliation, physical manifestations of distress, and other injury to the extent recoverable under each applicable statute;

E. Award punitive damages because of malice or reckless indifference to Plaintiff's federally protected rights;

F. Award reasonable attorneys' fees, recoverable expert fees, and costs;

G. Award prejudgment and post judgment interest as permitted by law; and

H. Grant such other appropriate relief as the Court deems just.

Respectfully submitted,

BOGAS & KONCIUS P.C.

By: /s/BRIAN E. KONCIUS ___________
Brian E. Koncius (P69278)
Attorneys for Plaintiff
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
(248) 502-5000
bkoncius@kbogaslaw.com
office@kbogaslaw.com

Date: October 29, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JUSTIN STRADER,

Plaintiff,

v.

Case No.

VEOLIA WTS SERVICES, INC.,
a Domestic For Profit Corporation, and
B&E RESOURCES LLC,
a Domestic For Profit Corporation,

Hon.

Defendants.
_______________________________________/

BOGAS & KONCIUS, PC
Kathleen L. Bogas (P25164)
Brian E. Koncius (P69278)
Attorney for Plaintiff
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
(248) 502-5000 / Fax: (248) 502-5001
bkoncius@kbogaslaw.com
office@kbogaslaw.com
_______________________________________________________________________/

**DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, JUSTIN STRADER, by and through his attorneys, BOGAS & KONCIUS P.C., and hereby demands a trial by jury of the issues in the above-captioned cause of action.

Respectfully submitted,

BOGAS & KONCIUS P.C.

By: /s/BRIAN E. KONCIUS ___________
Brian E. Koncius (P69278)
Attorneys for Plaintiff
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
(248) 502-5000
bkoncius@kbogaslaw.com
office@kbogaslaw.com

Date: October 29, 2026